```
                   UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

UNITED STATES OF AMERICA,       :    NO. 1:07-CR-00093(1)
                                :    Civil NO. 1:10-CV-00552
                                :
                                :    **OPINION AND ORDER**
       v.                       :
                                :
                                :
ALEX L. GARNETT.                :
                                :
                                :

This matter is before the Court on Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (doc. 176), Petitioner's Motion for Leave to Seek Discovery (doc. 177), Petitioner's Motion for an Evidentiary Hearing (doc. 178), Petitioner's Motion for Grand Jury Transcripts (doc. 179), the government's Omnibus Motion in Opposition (doc. 181), Petitioner's Motion for Judicial Notice (doc. 184), and Petitioner's Response in Support of his Section 2255 Petition (doc. 185).  For the reasons indicated herein, the Court DENIES Petitioner's Petition and each of Petitioner's accompanying motions.

**I.  Background**

On September 20, 2007, Petitioner entered a plea of guilty as to Count I of the Indictment, which charged Petitioner with Conspiracy to Possess Cocaine With Intent to Distribute in violation of 21 U.S.C. §841(a)(1), 21 U.S.C. 841(b)(1)(A)(ii), and 21 U.S.C. § 846 (doc. 75).  In his plea agreement, Petitioner acknowledged the truth of the Statement of Facts, which stated that

he knowingly conspired between Frank Munoz, Oscar Munoz, Armando Hernandez Loredo, and Alfonsa Ford to possess 9 kilograms of powder cocaine, with intent to sell or otherwise distribute, in the Southern District of Ohio (doc. 74). Subsequently, the Court sentenced Petitioner on such Count to 180 months of incarceration, five years of supervised release, and a $20,000.00 fine (doc. 125). Later, the Court reduced Petitioner's term by two years, to 156 months (doc. 172). Petitioner never appealed his sentence, and in fact, agreed in his plea agreement not to do so, and further, not to contest his sentence with a Section 2255 collateral attack (doc. 74). Petitioner is currently serving his sentence.

**II. Petitioner's Motion to Vacate His Sentence**

Petitioner now moves this Court to Vacate or Set Aside his Sentence, pursuant to 28 U.S.C. § 2255 (doc. 176). Petitioner alleges three arguments in support of his Petition: 1) that his attorney was ineffective in his representation, 2) that his plea was not knowing and voluntary, and 3) that the government violated his Fifth and Sixth Amendment rights by meeting with him without his attorney present (doc. 176). Citing United States v. Mader, 251 F.3d 1099, 1103 (6th Cir. 2001), Petitioner argues the waiver in his plea agreement does not preclude an appeal concerning the validity of his plea (Id.). Further, citing Davila v. United States, 258 F.3d 448, 451 (6th Cir. 2001), Petitioner argues he should be permitted to collaterally attack his sentence based on

ineffective assistance of counsel (Id.). Petitioner essentially argues that due to ineffective assistance of counsel, he was unable to make a knowing, voluntary, and intelligent plea, and thus the Court should entertain the claims in his Petition (Id.).

The government responds that under United States v. Frady, 456 U.S. 152, 164-65 (1982), "[o]nce the defendant's chance to appeal has been waived or exhausted, [courts] are entitled to presume that [the defendant] stands fairly and finally convicted. . . .[f]or this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal." As such, in the government's view, Petitioner procedurally defaulted having not raised his arguments on appeal (doc. 181).

Petitioner replies that the government is improperly attempting to broaden imprecise waiver provisions in his plea agreement to preclude review of his claims (doc. 185). Citing Bridgeman v. United States, 229 F.3d 589-92 (7th Cir. 2000), Petitioner contends that waiver of a challenge to a conviction does not waive challenges based on ineffective assistance of counsel, prosecutorial misconduct, and the voluntariness of the plea (Id.).

Having reviewed the parties' arguments, the Court finds Petitioner's arguments regarding waiver prevail, and that out of an abundance of caution, the Court should review his claims for ineffective assistance of counsel, for voluntariness of his plea, and for prosecutorial misconduct. Accordingly, the Court will

3

address the merits of each claim, seriatum:

**A. Petitioner's Claim for Ineffective Assistance of Counsel**

Petitioner claims that his attorney 1) did not do a good enough job "investigating" or "reviewing evidence," 2) failed to inform him of the elements of the crime charged, 3) should have insisted on express protections and assurances of a sentence reduction by written agreement, and 4) "harbored an actual conflict of interest" (doc. 176). The government contends none of these claims have merit (doc. 181).

**1. Investigation and Review of Evidence**

Petitioner notes that at his sentencing hearing, Drug Enforcement Agency ("DEA") Agent Joseph M. Reder testified that the drug transaction was recorded, but such recording was not mentioned in the criminal complaint filed in this case (doc. 176). Petitioner contends that in fact, the allegation about his involvement in the conspiracy came from a cooperating co-Defendant (Id.). Petitioner views this as a "contradiction," and contends that his attorney, who never reviewed the audio tapes, should have reviewed them (Id.). Because the government "does not show how counsel conducted an investigation in a meaningful manner," (doc. 185), Petitioner contends he should prevail under this theory.

The Court does not find Petitioner's claim that his attorney failed to conduct a meaningful investigation into the audio tapes a sufficient basis for a claim for ineffective

4

assistance of counsel.  As the government notes in its Response, the "rigorous" standard of Strickland v. Washington, 466 U.S. 668 (1984) requires Petitioner to show both that his counsel's performance fell below an objective standard of reasonableness, and that but for the error, the outcome would have been different (doc. 181).  Here, Petitioner's counsel's non-review of the audio tapes was not objectively unreasonable in the light of the fact that there was corroborating evidence, including but not limited to the testimony of a cooperating co-Defendant, that showed Petitioner was involved in the conspiracy.  Even if the non-review of the tapes would constitute an error, the outcome here would not be different because there was such other corroborating evidence of Petitioner's guilt.  Petitioner's theory that his counsel was ineffective for failing to conduct an investigation lacks merit.

  **2. Failure to Inform of the Elements**

  Petitioner next contends that his counsel failed to apprise him of the nature and the elements of the conspiracy offense (doc. 176).  However, at Petioner's change of plea hearing, the elements of his offense were read into the record (doc. 148).  The Court queried, "And you're offering to plead guilty because you're in fact guilty of the charge of conspiracy," and Petitioner responded, "Yes" (doc. 148).  The Court finds no genuine question that Petitioner understood the elements of the charge against him, and under the Strickland standard, even had his counsel failed to

5

advise him of the elements, the outcome would not have been different.  Petitioner's theory lacks merit.

### 3. Written Agreement for Sentence Reduction

Petitioner next contends his counsel was ineffective for arranging proffer debriefings without immunity or plea agreement protection (doc. 176).  The core of Petitioner's argument here appears to be his disappointment regarding a lack of guarantee that he would be awarded for his cooperation with the government.  The decision whether to move for a downward departure for substantial assistance is within the province of the government.  Fed. R. Crim. P. 35.  Ultimately, the government moved for such a departure, and the Court granted a sentence reduction (doc. 172).  The Court finds no basis under Petitioner's theory here that his Counsel's actions or inactions somehow fell below an objective standard of reasonableness, or that but for any error, the outcome would have been different.  Petitioner's theory lacks merit.

### 4. Abandonment of Client at Critical Stage

Petitioner's final theory is that his Counsel abandoned him during Petitioner's post-indictment discussions with government agents at the Butler County Jail in December 2007 (doc. 176).  According to Petitioner, his counsel indicated he had a conflict of interest, for fear that Petitioner would reveal information concerning any of counsel's present or future clients (Id.).  The government responds that Petitioner cannot point to a single

negative consequence that stems from his attorney's efforts on his behalf (doc. 181). The Court agrees. The discussions at the Butler County Jail ultimately led to Petitioner's sentence reduction, as indicated above. Petitioner cannot show that his counsel's action was objectively unreasonable or that but for any error, the outcome would have been different. Strickland, 466 U.S. 668. Petitioner's theory lacks merit.

**B. Petitioner's Claim that His Plea of Guilty is Invalid**

Petitioner claims his plea of guilty of conspiracy is invalid under the theory that it was not voluntary, knowingly, and intelligently made (doc. 176). He claims the evidence merely showed he set up by telephone a drug purchase from Armanda Heraldez Loredo, which does not show a conspiracy (Id.). He claims again, as above, that his counsel failed to advise him of the true nature of the offense of conspiracy (Id.).

The government responds that the transcript of the change of plea hearing shows that Petitioner's plea was indeed knowing and voluntary (doc. 181). The Court agrees. At the hearing, the United States Attorney read into the record the essential elements of a violation of 18 U.S.C. § 846:

> [F]irst; that during the time period set forth in the indictment, the persons named in the indictment and others agreed to possess with intent to distribute and to distribute cocaine; [s]econd, that this defendant joined those people in agreeing to distribute and possessing with intent to distribute cocaine; [t]hird, that this defendant did so knowingly and intentionally; and fourth, this conspiracy existed, in whole or in part, in the

7

Southern District of Ohio.

(doc. 148).   After the U.S. Attorney read the essential elements, DEA Agent Reder provided the statement of facts:

> On Tuesday, July 3, 2007, law enforcement officers in Gray County, Texas, intercepted 10.9 kilograms of powder cocaine, a Schedule II controlled substance, as it was being transported from Arizona in a 1991 Lexus sedan to a residence in Fairfield, Ohio, by brothers Frank Munoz and Oscar Munoz, at the direction of Armando Heraldez Loredo. Frank Munoz, Oscar Munoz, Alex Garnett, Armando Heraldez Loredo and Alfonsa Ford all conspired to have the cocaine transported into the Southern District of Ohio for distribution.  Officers arranged to monitor the load as it moved to Fairfield, Ohio, with the Munoz brothers.
>
> Later, Loredo instructed Frank and Oscar Munoz to deliver the cocaine to the residence in Fairfield, Ohio, where they would meet and deal with a man Loredo identified as Jose, who was bringing $500 in U.S. currency with him to cover the Munoz brothers' expenses for the trip, and who would ultimately bring them payment for the cocaine.
>
> On July 4, 2007, Frank and Oscar Munoz arrived at the residence in Fairfield, Ohio, with the cocaine. Jose, later identified as Alex Garnett, arrived at the location at approximately 1:30 a.m. on July 5, 2007, accompanied by Alfonsa Ford.  Alfonsa Ford exited the vehicle in which he and Garnett had arrived and served as a lookout by checking or surveiling the area, looking into the windows of the vehicles occupied by undercover officers. He then announced to Alex Garnett that he couldn't see inside that vehicle.
>
> Garnett called Frank Munoz and then came into the residence, where he agreed to pay $171,000 in U.S. currency for the cocaine. Garnett then placed the bricks of cocaine into a black plastic garbage bag. Officers immediately arrested Alex Garnett, Alfonsa Ford, Frank Munoz and Oscar Munoz.  Armando Heraldez Loredo remains at large and is a fugitive.
>
> Frank Munoz, Oscar Munoz, Alex Garnett, and Armando Heraldez Loredo and Alfonsa Ford knowingly and unlawfully conspired between themselves and with others during the

8

> period stated in the indictment to possess 10.9 kilograms of powder cocaine with intent to sell or otherwise distribute to others in the Southern District of Ohio. All of the aforementioned conduct occurred in the Southern District of Ohio.

(Id.).  After this, the Court queried Petitioner, "Mr. Garnett, is the statement of Mr. Reder, Special Agent, correct?" to which Petitioner replied, "Yes Sir" (Id.).  Then the Court asked, "And you are offering to plead guilty because you're in fact guilty of the charge of conspiracy?" to which Petitioner replied, "Yes" (Id.).

The Court finds nothing in this record which shows that Petitioner, clearly a very intelligent man, did not enter his plea voluntarily, knowingly, and intelligently.  The Statement of Facts to which Petitioner agreed shows he knowingly and intentionally agreed with a number of individuals to possess and distribute cocaine, and that their conspiracy took place, in part, in the Southern District of Ohio.  Petitioner's challenge to the validity of his plea is lacking in merit.

**C. Prosecutorial Misconduct**

Petitioner brings two theories in support of his claim of prosecutorial misconduct (doc. 176).  First, Petitioner claims that the government circumvented his right to counsel when DEA agents met with him at the Butler County Jail, and second, that his sentence is based on perjured testimony by DEA agent Reder (Id.).

As for his first theory, the Court finds Petitioner was

9

in no way prejudiced by his meetings with the agents, which ultimately worked in his favor, as he received a reduced sentence (doc. 172). As for his second theory, Petitioner seeks inconsistency in Reder's testimony as to Reder's location on July 5, 2007, when Reder observed the drug transaction. The Court finds no inconsistency, and finds Petitioner's theory completely without merit that somehow Reder perjured himself.

**III. Petitioner's Remaining Motions (docs. 177, 178, 179, 180).**

In his remaining motions, Petitioner seeks Leave to Seek Discovery (doc. 177), Petitioner moves for an Evidentiary Hearing (doc. 178), Petitioner moves for Grand Jury Transcripts (doc. 179), and finally, Petitioner Moves the Court to take Judicial Notice (doc. 184). The government states the first three motions should be denied as immaterial, in light of the fact that Petitioner's Section 2255 Motion is lacking in merit (doc. 181). The Court agrees.

However, as the government did not address Petitioner's final motion, the Court finds it appropriate to address the issue of judicial notice. Under Federal Rule of Evidence 201(b), the kind of fact for which a court may take judicial notice "must be one not subject to reasonable dispute in that it is either 1) generally known within the territorial jurisdiction of the trial court, or 2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."

Petitioner moves the Court to take judicial notice of a September 23, 2010 article in USA Today, a national newpaper, concerning prosecutorial misconduct (doc. 184). Petitioner argues that such article is "relevant to the public expectation of fairness and outrage at governmental abuse in the criminal process" (Id.). The Court agrees with Petitioner that the public properly expects fairness in the criminal process, and that any abuses should be remedied. However, the Court reiterates that there is no factual basis for a claim of prosecutorial misconduct in this case. Petitioner received due process, fairness, and was not subjected to government abuse. Although the Court can take judicial notice of the fact that USA Today, is a national publication, the logical jump that Petitioner appears to seek, is not one that comports with Rule 201(b). That is, the inference that prosecutorial misconduct is endemic based on unfortunate abuses across the country, is subject to reasonable dispute, and not "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Accordingly, the Court denies Petitioner's motion.

**IV. Conclusion**

Having reviewed this matter, the Court finds absolutely no basis for the theory that Petitioner's attorney was ineffective in his representation, that Petitioner's plea was not knowing and voluntary, or that the government in any way acted improperly in

11

relation to Petitioner.  As such, the Court DENIES Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (doc. 176), DENIES Petitioner's Motion for Leave to Seek Discovery (doc. 177), DENIES Petitioner's Motion for an Evidentiary Hearing (doc. 178), DENIES Petitioner's Motion for Grand Jury Transcripts (doc. 179), and DENIES Petitioner's Motion for Judicial Notice (doc. 184).  The Court further FINDS that a Certificate of Appealability should not issue in this case, and CERTIFIES pursuant to 28 U.S.C. § 1915(a)(3) that any appeal of this Order would not be taken in good faith, and any application to appeal <u>in forma pauperis</u> will be denied.

       SO ORDERED.

Dated: April 29, 2011       <u>s/S. Arthur Spiegel</u>

                              S. Arthur Spiegel
                              United States Senior District Judge